UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

SAKAL ADVISORY LLC,

        Plaintiff,

v.

ANTHONY LUCAS DeBENEDICTIS,

        Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL
(INJUNCTIVE RELIEF SOUGHT)**

COMES NOW Plaintiff, SAKAL ADVISORY LLC, by and through undersigned counsel, and sues Defendant, ANTHONY LUCAS DeBENEDICTIS, stating:

**I.      NATURE OF THE ACTION**

1.    This is a civil action brought pursuant to, *inter alia,* the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), *et seq.,* for an injunction and damages arising from the willful and malicious misappropriation of trade secrets gained during employment.

**II.     PARTIES**

2.    Plaintiff SAKAL ADVISORY LLC ("Plaintiff" and/or "Sakal" or "the Firm") is a limited liability company organized under the laws of Florida with its principal place of business at 3323 NE 163rd Street, STE 604, North Miami Beach, Florida

33160. Sakal is a private investment firm and is in the business of providing investment guidance, strategies, and specialized information to its clients, investors, and subscribers, and to a meticulously crafted and culled selection of prospective clients, throughout the United States and foreign countries.

3.      Defendant ANTHONY LUCAS DeBENEDICTIS ("Defendant" and/or "ADB") is a natural person, Sakal's former employee, and upon information and belief, is currently a resident of Durham County, Chapel Hill, North Carolina.

4.      This action is brought as a result of ADB's theft of trade secrets and confidential information, conversion, breaches of contract (including breach of non-competition and confidentiality agreements), breaches of fiduciary duty, and tortious interference with business relationships.

### III.    JURSISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the Plaintiff's claims occurred in Miami-Dade County, Florida and because Plaintiff is a citizen and resident of Miami-Dade County, Florida.

7.      All conditions precedent to the filing of this lawsuit have been satisfied, fulfilled, or have been otherwise waived by the Defendant.

### IV.    GENERAL ALLEGATIONS

8.      Sakal is a unique venture capital firm headquartered in North Miami

2

Beach, Florida. It is among very few such firms that has an established history of identifying alternative investments that are more nuanced than traditional publicly traded equities and bonds, and proven track record of improving clients' portfolio diversification and success in meeting long-term investment goals.

9.   Sakal has a unique composition of wealth management advisors, equity hedge fund portfolio managers, and technology advisors which allows it to be at the apex of exponential growth industries such as software as a service, financial technology disruptors, artificial intelligence, alternative food products, cyber security, *et al.*

10.   Sakal's clients, investors, subscribers, and prospective customers are spread throughout the United States and foreign countries.

11.   Competition within the private investment sector is aggressive and highly sensitive to established trust and personal relationships due to the opaqueness of deals in the private market.

12.   Since Sakal's inception, it has devoted a significant amount of time, money, and effort in establishing and maintaining active, ongoing, and substantive relationships with specific customers through marketing efforts, and developing and nurturing substantial, close working relationships with highly qualified clientele.

13.   Once an initial relationship with clients is established, Sakal expends substantial time, effort, and resources to offer a compilation of services customized to clients' specific needs, resulting in garnered relationships with clients who repeatedly return to Sakal for their investment needs. These

3

relationships are the mainstay of Sakal's business, developed and maintained most closely by Sakal's investor representatives.

14.     Sakal's research, investments, relationships with companies and management teams, and in-house reports are all unique and emanate from information culled, obtained, and/or created by Sakal.

15.     Sakal's information is secret.

16.     Defendant used Sakal's information and continues to use it without Sakal's permission and in direct contravention of Defendant's agreement and promise not to use it.

17.     The information confers a competitive advantage as it is not generally known.

18.     Sakal's information is subject to reasonable efforts to keep it secret.

19.     Sakal is a pioneer and leader in the investment industry and, since its inception, has expended resources on marketing strategies for the purposes of client acquisition and development of name recognition. It has crafted a unique compilation or list of clients, investors, subscribers, and prospective clients, meticulously culled after a great deal of time, money and effort toward developing and maintaining a list of prospective and actual clients which contains, *inter* alia, the names, cell phone numbers, office telephone numbers, email addresses, and Zoom information, along with the investment history and preferences of particular clients ("Client List").

20.     Sakal's Client List and clients' personal information are protected from access by third parties. For example, such information can only be accessed with

password protected portals and used via vendors such as DocuSign.

21.     Sakal's Client List, and the information contained therein, are proprietary, confidential and trade secret information belonging exclusively to Sakal. Sakal's Client List provides Sakal a distinct business advantage over its competitors by, among other things, allowing Sakal information as to the net worth, investment preferences, and investment proclivities of its clients.

22.     The information contained in Sakal's Client List is not a compilation of information commonly available to the public. In recognition of the importance of the information comprising its Client List, Sakal has taken reasonable steps to ensure that it remains confidential, including granting access to the Client List to employees on a restricted, password-protected system to which only employees approved for access can access, and only after the employee executes an Employment Agreement expressly acknowledging that Sakal's compilation or list of clients, investors, subscribers, and prospective clients (and their related information described *supra*) is proprietary and agreeing to maintain confidentiality.

23.     Sakal also created and culled over time a "pitchbook," a proprietary and confidential marketing tool uniquely tailored to Sakal's clients and prospective clients. Sakal's pitchbook is among its trade secretes and confidential information.

24.     Sakal maintains, and at all times relevant maintained and had in place, internal trade secret and confidential information management and clearance mechanisms to avoid disputes as much as possible and establish necessary

5

protection for its trade secrets and confidential information and tools. Sakal has expended substantial resources acquiring its clients, investors, subscribers, and identifying prospective clients, developing its reputation and investment and business strategies, and safeguarding the confidentiality of same.

25.     Sakal's trade secrets and confidential information and tools are related to products or services used in, or intended for use in, interstate and/or foreign commerce; not only are Sakal's products or services pertaining to its business of investment used in, or intended for use in, interstate and foreign commerce, but its Clients List is comprised, in part, of clients, investors, subscribers, and prospective clients that are domiciled in other states and foreign countries and/or maintain business operations in other states and/or foreign countries.

26.     Were a competitor of Sakal to capitalize on the existing relationships between a Sakal investment advisor, investor representative, or consultant and Sakal's clients with whom it has a substantial relationship or gained access to Sakal's Client List and confidential information, Sakal would lose the competitive advantage it created, developed, and culled through its considerable labor and time.

27.     The same is true if a competitor were to access or acquire Sakal's pitchbook.

28.     On or around August 2020, Sakal hired ADB as an investment representative and gave him the title "Head of Capital Development." His primary responsibilities were to distribute Sakal's research and investment opportunities to prospective investors while simultaneously promoting awareness of Sakal's

investment process, team, and firm.

29.    On or around August 2020, in exchange for valuable consideration, Sakal and ADB executed an Employment Agreement wherein ADB agreed, *inter alia*, to provide exclusive services to Sakal, which included ADB's development, research, and direction of the execution of investment strategies for Sakal's clients and potential clients. The Employment Agreement ("the Contract") is marked, filed contemporaneously, and incorporated herein as "Exhibit 1."

30.    The Contract includes, *inter alia*, ADB's agreement to maintain the confidentiality of all material provided by Sakal and acquired by ABD during his tenure with Sakal; ADB's covenant against competition during employment and a specified period upon employment cessation; and a prohibition against ADB's solicitation of Sakal's investor clients upon employment cessation. *Id.*

31.    Specifically, the Contract contains restrictive covenants regarding Confidentiality, Non-Solicitation, Ownership, and Return of Materials under Paragraphs 7, 9, and 10:

7. Confidentiality.

a. In this [Contract] Agreement:

i. "Confidential Information" means any services, processes or procedures developed, produced, marketed or sold by or on behalf of the Firm or any of its Affiliates; any lists (including lists of clients, investors, subscribers, or prospective clients, investors, subscribers of the Firm or any of its Affiliates, now existing or hereafter created) or other records relating to the Firm or any of its Affiliates' clients, investors, subscribers, or suppliers or prospective clients, investors, subscribers, or suppliers; financial information and any other trade secret, proprietary, business or technical data or information relating to the Firm or any of its Affiliates or their business (including, without limitation, investment strategies, portfolio

design and construction, portfolio models and trading strategies), products or services as now or hereafter conducted, developed, produced, marketed or sold; any software, source code, documents, forms, advice or guidance or other documentation related to any of the foregoing, that is provided or disclosed to, or developed or discovered by, the employee, by or on behalf of the Firm or any of its Affiliates or otherwise comes to the employee's attention directly or indirectly in connection with, or as a result of the employee's relationship with the Firm or any of its Affiliates or in performing his duties and functions for the Firm.

ii. "Client" and "prospective Client," means, as of the effective date of any termination of the Employee's employment with the Firm (but without intending to limit the meaning of such terms prior to any such termination), any client, investor or subscriber, or prospective client, investor or subscriber of the Firm or any of its Affiliates at the time of the effective date of such termination.

b. During the Employee's association with the Firm as an employee and after such association with the Firm has ended for any reason, he will hold the Firm's Confidential Information in the strictest confidence and will not, directly or indirectly, use, disclose (in any way or in any manner, including by posting on the Internet), reproduce, distribute, or reverse engineer or otherwise provide the Firm's Confidential Information to anyone else, except with the prior written consent of the Manager of the Firm or its Affiliate, as the case may be, or, during his association with the Firm or its Affiliate, as the case may be, in furtherance of his duties or services to the Firm or its Affiliate. The obligation set forth in this Section 7 shall survive indefinitely.

c. After the Employee's association with the Firm ends for any reason or upon the request of the Manager of the Firm or its Affiliate, as the case may be, the Employee shall (i) return to tile Firm or its Affiliate, or if permitted by the Manager of the Firm or its Affiliate, destroy all Confidential Information (and will not keep in his or her possession, recreate or deliver to anyone else such Confidential Information), in whatever form or media and all copies thereof, and (ii) provide the Firm or its Affiliate with a written certification, executed by him, that he has satisfied all of his obligations under clause (i) above.

9. Non-Solicitation.

For so long as the Employee is an employee of the Firm and for one (2) year [sic] after termination of his employment, he shall not, directly or indirectly (other than in his capacity as an officer for the benefit of the

8

Firm or its Affiliates) (i) solicit for employment or hire any person who is at the time of such solicitation or hiring or otherwise conducting business, or was within twenty four (24) months preceding such solicitation or hiring or conducting business employed by the Firm or any of its Affiliates, (ii) solicit or encourage any employee of the Firm, or any of their Affiliates to terminate such employee's employment or breach any restrictive covenant between such employee and the Firm or such Affiliate, or (iii) solicit or assist in soliciting any person, who is at the time of such solicitation or was within twelve (12) months preceding such solicitation or acceptance a client, investor or subscriber of the Firm or any of its Affiliates. For purposes of clause (iii) of this section only, the terms "client," "investor" and "subscriber" shall not include any immediate family members of the Employee.

10. Ownership and Return of Materials.

Alt materials (including, without limitation, Confidential Information, documents, drawings, models, apparatus, sketches, designs, lists, and all other tangible media of expression) furnished to the Employee by the Firm or otherwise created by or in the possession or control of the Employee shall he will not remove from the Firm's premises any Confidential Information, records, files, drawings, documents, equipment, materials and writings received from the Firm, or otherwise created by or in the possession or control of the Employee or otherwise created for or belonging to the Firm. Upon termination of his employment, or at any time on the request of the Firm before termination, he will promptly (but no later than five (5) days after the earlier of his termination of employment or the Firm's request) destroy in a manner that does not violate any Jaws or deliver to the Firm, at the Firm's option, (a) all materials furnished to him by the Firm, (b) all tangible media of expression that are in his possession or control, (c) any Confidential Information or (d) any material that otherwise relate to the Firm's business. The Employee will give to the Firm written certification of his compliance with the obligations under the immediately preceding sentence.

The Contract (Exhibit 1).

32.   ADB held the position of Head of Capital Development throughout his employment with Sakal. In the position, ADB's job responsibilities included, but were not limited to, communicating with Sakal's clients, investors, subscribers, and prospective clients to facilitate their utilization of Sakal's services and

9

investment strategies. ADB was provided full access to contact information for Sakal's clients, along with other proprietary, confidential, and trade secret information, including Sakal's Client List, to enable him to carry out his job duties.

33.    In addition to access to Sakal's confidential information, ADB's tenure with Sakal enabled him to develop relationships with customers with whom Sakal had initiated, developed, and/or maintains a substantial relationship.

34.    On February 3, 2022, ADB separated his employment from Sakal with a post on his LinkedIn profile to "everyone" that he was "[hashtag] open to work" and searching for a "new role." Post is marked, filed contemporaneously, and incorporated herein as "Exhibit 2."

35.    The post content, given the financial industry it was targeting, in conjunction with ADB's position at Sakal, that it had even been posted, and the venue it was posted in, signified ADB's resignation. See *id.*

36.    Sakal was unaware of ADB's intention until that posting.

37.    Later that night, Sakal's Manager, Kris "Bort" Bortnovsky, learned of ADB's LinkedIn post and confirmed ADB's resignation and intention to separate from the Firm. That conversation led to ADB's formal separation from Sakal.

38.    On Friday, February 4, 2022, (the next day) Sakal circulated announcements to all limited partners regarding ADB's separation from Sakal. 2/4/2022 Email Exemplar (redacted) announcement is marked, filed contemporaneously, and incorporated herein as "Exhibit 3."

39.    Also on February 4, 2022, Bortnovsky sent ADB a text regarding ADB's

separation from Sakal and reminding ADB, in detail, of his obligations under the Contract including non-disparagement, to immediately cease all communications with Sakal's clients, and for ADB to immediately return all property/confidential information/material belonging to Sakal.

40.     ADB worked for Sakal from August 2020 through February 2022. While employed by Sakal, ADB worked and resided in South Florida.

41.     Immediately following his separation from Sakal and in violation of the Contract, ADB began soliciting Sakal's current investors, utilizing information from Sakal's Client List, and disclosing Sakal's confidential information to third parties. Declaration of "SB" [redacted] is marked, filed contemporaneously, and incorporated herein as "Exhibit 4"; Declaration of "JWB" [redacted] is marked, filed contemporaneously, and incorporated herein as "Exhibit 5."1

42.     ADB's willful and malicious behavior persisted and on June 29, 2022, and October 10, 2022, Sakal sent ADB additional text messages reminding ADB of his obligations under the Contract and warning him to cease all disparagement of Sakal and solicitation of Sakal's clients.

43.     Not only did ADB not cease his prohibited activity, but he escalated his solicitation efforts and otherwise continued to directly solicit, contact, and pitch Sakal's investors, disparage Sakal, and to utilize and disclose Sakal's confidential information. See *id.*

44.     As a direct consequence of ADB's actions, Sakal retained legal counsel.

---

1Unredacted versions will be produced upon Court Order.

45.    On February 17, 2022, Sakal's counsel sent ADB a letter, inter alia, reciting ADB's duties of confidentiality under the Contract, demanding ADB's cessation of activities as prohibited under the Contract, and demanding ADB's return of Sakal's confidential information in his possession. February 17, 2022, letter is marked, filed contemporaneously, and incorporated herein as "Exhibit 6."

46.    ADB persisted.

47.    On March 17, 2022, Sakal's counsel sent another letter to ADB, demanding ADB's immediate cessation of solicitation of Sakal's clients. March 17, 2022, letter is marked, filed contemporaneously, and incorporated herein as "Exhibit 7."

48.    The March 17, 2022, letter was directed to ADB's counsel, pursuant to counsel's notification that he represented ADB. *Id.*

49.    After ADB's separation, ADB violated the restrictive covenants contained in the Contract by misappropriating Sakal's proprietary, confidential, and trade secret information, including Sakal's Client List, pitchbook, Sakal's clients', investors, subscribers, and prospective investors' contact information and investing information, and by competing with Sakal, soliciting Sakal's clients, and otherwise interfering with Sakal's business relationships and prospective business relationships.

50.    ADB continued and continues to improperly solicit Sakal's clients to do business with him and/or Sakal's competitors by referring to or otherwise using Sakal's Client List and pitchbook that ADB misappropriated from Sakal. Exhibits

4 and 5 (Declarations).

51.     ADB's theft of Sakal's Client List and pitchbook was done with specific, malicious, and willful intent to misappropriate and use the information contained therein after ADB's separation of employment with Sakal, in order to obtain other employment and/or to compete with Sakal and cause Sakal's clients to cease doing business with Sakal, all in violation of the Contract.

52.     ADB's conduct was for his own benefit, and all to the detriment of Sakal.

### V.     CAUSES OF ACTION

### COUNT I:   18 U.S.C. § 1836(b)(3)(A) MISAPPROPRIATION OF TRADE SECRETS INJUNCTIVE RELIEF

53.     Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

54.     This is an action for injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

55.     As a Sakal employee, ADB was privy to trade secrets of Sakal. ADB was provided access to Sakal's proprietary Client List, pitchbook, technical information, investment strategies, and business and marketing plans for the purposes of carrying out his job duties with Sakal and in furtherance of Sakal's business interests.

56.     Sakal's trade secrets and confidential information are related to products or services used in interstate and/or foreign commerce.

57.     As part of and after ADB' separation of employment from Sakal, ADB misappropriated Sakal's trade secrets and has utilized the misappropriated information to improperly solicit Sakal's clients, investors, and subscribers, and

to target prospective clients from Sakal's protected Client List, including but not limited to clients S., J.B., D.S., A.B.A., S.P., W.T.M., B.D.H. and E.M., and to otherwise interfere with Sakal's business relationships. See Exhibits 4 and 5.

58.    As part of and after ADB's separation of employment from Sakal, ADB misappropriated Sakal's pitchbook and, upon information and belief, has utilized the misappropriated information to approach and solicit third parties, including Sakal's competitors. See, e.g., Exhibits 4 and 5.

59.    ADB willfully and maliciously appropriated Sakal's trade secrets.

60.    Sakal reasonably fears that if ADB is not enjoined from doing so, he will continue to misappropriate Sakal's trade secrets to solicit and steal Sakal's clients, investors, and subscribers.

61.    Sakal also reasonably fears that if ADB is not enjoined from doing so, he will continue to misappropriate Sakal's trade secrets to solicit and otherwise block Sakal's business opportunities with prospective clients.

62.    Additionally, Sakal reasonably fears that if ADB is not enjoined from doing so, he will continue to misappropriate Sakal's trade secrets and share the misappropriated information with third parties, including Sakal's competitors.

63.    Sakal will be irreparably harmed if ADB is not enjoined from utilizing (and/or sharing) the misappropriated information.

64.    Injunctive relief would serve the public interest.

65.    Sakal is without adequate remedy at law as there are no quantifiable damages that would fully compensate Sakal.

66.    If ADB is not enjoined from engaging in this improper conduct, Sakal's

14

business may be destroyed.

67.     Sakal has a substantial likelihood of success on the merits as Sakal and ADB entered into an Employment Agreement (i.e., Exhibit 1, the Contract) which expressly barred ADB from taking, utilizing, or sharing Sakal's confidential information, including trade secrets.

     **WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, seeks an injunction requiring that Defendant, ANTHONY DeBENEDICTIS ("ADB"), cease any and all further misappropriation of Sakal's trade secrets; immediately return all trade secrets to Sakal; enjoining ADB from further utilization and sharing of Sakal's trade secrets; and awarding Plaintiff its attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D); and for all such other further relief this Court deems proper.

### COUNT II:   18 U.S.C. § 1836(b)(3)(B) MISAPPROPRIATION OF TRADE SECRETS DAMAGES

68.     Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

69.     This is an action for action for damages pursuant to 18 U.S.C. § 1836(b)(3)(B).

70.     As a result of ADB's wrongful actions, Sakal has damages.

71.     Sakal's damages continue to accrue.

     **WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, demands judgment against Defendant, ANTHONY DeBENEDICTIS, in accordance with 18 U.S.C. § 1836(b)(3)(B), in the amount of actual losses caused by the misappropriation of

Sakal's trade secrets and damages for any unjust enrichment caused by the misappropriation of the trade secrets that are not addressed in computing damages for actual loss; or, in lieu of damages measured by other methods, the damages caused the misappropriation measured by imposition of liability for a reasonable royalty for ADB's unauthorized disclosure or use of the trade secrets; along with exemplary damages in an amount not more than two times the amount of the damages awarded and an award of attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D); and for all such other further relief this Court deems proper.

**COUNT III:   BREACH OF FIDUCIARY DUTY**
**DAMAGES**

72.     Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

73.     As an employee of Sakal, ADB acquired secret information of Sakal that was not publicly available and occupied a position of trust and confidence regarding said information. ADB was provided access to and was privy to Sakal's confidential information and trade secrets, including Sakal's Client List, technical information, investment strategies, and business and marketing plans for the purpose of carrying out his job duties for Sakal and in furtherance of Sakal's business interests.

74.     ADB owed Sakal a fiduciary duty is to act in Sakal's interest with respect to certain transactions, even above ADB' own interest, and is and was obligated to act in good faith and to act with care and loyalty toward Sakal.

75.     ADB was well aware of this fiduciary duty and expressly acknowledged same when he voluntarily and knowingly executed the Contract (Exhibit 1) with Sakal.

76.     ADB misappropriated Sakal's confidential information and trade secrets while a Sakal employee and after his separation of employment. ADB's misappropriation is ongoibng.

77.     ADB breached his fiduciary duties, including his duty of loyalty, by, *inter alia*:

      a.  stealing Sakal's Client List, client, investor, subscriber, and prospective client information, and other related, proprietary and confidential information;

      b.  utilizing the misappropriated information to improperly, unjustifiably, and intentionally solicit Sakal's clients, investors, subscribers, and prospective clients and otherwise take business opportunities from Sakal and/or interfere with Sakal's business relationships and/or engage in a competing business with Sakal; and

      c.  sharing the misappropriated information with third parties and/or failing to protect the disclosure of misappropriated information from third parties, including Sakal's competitors.

78.     As a direct and proximate result of ADB' breach of his fiduciary duties, Sakal has been damaged, including but not limited to special damages in the form of lost profits, loss of client goodwill, lost business opportunities, damage

to client relationships, loss of market position, loss of reputation in the industry, diminution of brand, and damage to its valuable competitive advantage.

79.     ADB knew the wrongfulness of his conduct and the high probability that damage to Sakal would result and, despite that knowledge, intentionally pursued a course of conduct of denial, delay, and refusal to return Sakal's confidential, proprietary information and other property, refusal to cease his solicitation of Sakal's clients, investors, subscribers, and prospective clients, and his refusal to cease sharing and dissemination to third parties and Sakal's competitors, resulting in damage to Sakal.   Further, ADB had a specific intent to harm Sakal and did harm Sakal as a direct and proximate result of his breach of fiduciary duties.

80.     ADB' conduct was willful and malicious and/or so reckless and wanting in care and regard for Sakal that it constituted a conscious disregard or indifference to Sakal's rights and interests.

**WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, demands judgment against Defendant, ANTHONY DeBENEDICTIS ("ADB"), for general damages; special damages as set forth *supra,* including but not limited to lost profits, loss of client goodwill, etc.*;* punitive damages; attorneys' fees and costs pursuant to the Contract and applicable contract law; and for all such other further relief this Court deems proper.

## COUNT IV: BREACH OF FIDUCIARY DUTY INJUNCTIVE RELIEF

81.     Sakal re-alleges and incorporates by reference Paragraphs 1 through 52

and 68 through 80 as if fully set forth herein.

82.   Sakal reasonably fears that if ADB is not enjoined from doing so, he will continue to misappropriate Sakal's trade secrets, to solicit and steal Sakal's clients, investors, subscribers, and/or prospective clients, and to otherwise interfere with Sakal's business relationships.

83.   Sakal will be irreparably harmed if ADB is not enjoined from utilizing the misappropriated information and material.

84.   Injunctive relief would serve the public interest.

85.   Sakal is without an adequate remedy at law as there are no quantifiable damages that will fully compensate Sakal.

86.   If ADB is not enjoined from engaging in this improper conduct, Sakal' business may be destroyed.

87.   Sakal has a substantial likelihood of success on the merits as Sakal and ADB entered into an Employment Agreement ("the Contract") which barred ADB from taking and utilizing and sharing Sakal's confidential information, including trade secrets.

   **WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, seeks an injunction requiring that Defendant, ANTHONY DeBENEDICTIS ("ADB"), cease any and all misappropriation of Sakal's trade secrets, proprietary and confidential information (including but not limited to Sakal's Client List and pitchbook); immediately return all trade secrets and proprietary and confidential information (including but not limited to Sakal's Client List and pitchbook) in ADB's possession or control to Sakal;   permanently enjoining ADB from further

utilization and sharing of Sakal's trade secrets, proprietary, and confidential information (including but not limited to Sakal's Client List and pitchbook); directing ADB to disgorge all profits received, obtained, facilitated, and anticipated and immediately recompense Sakal is that same amount; awarding Plaintiff its attorneys' fees and costs; and for all such other further relief this Court deems proper.

**COUNT V: TORTIOUS INTERFERENCE WITH**
**BUSINESS RELATIONSHIP**

88.     Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

89.     Sakal had and has business relationships with specifically identifiable clients, investors, subscribers and prospective clients.

90.     ADB knowingly, intentionally, and unjustifiably utilized, referred to, and/or shared Sakal's Client List and pitchbook and other confidential information that he misappropriated from Sakal to directly or indirectly contact, induce, and/or solicit Sakal's clients, investors, subscribers, and prospective clients to terminate their relationship with or otherwise cease doing business with, and/or not initiate any business with, Sakal, and to directly or indirectly interfere with Sakal's relationships with its clients, investors, subscribers, and prospective clients so as to cause Sakal harm.

91.     ADB's actions were intentional interference with Sakal's business and contractual relationships and was willful, malicious, wanton and/or in reckless disregard of Sakal's rights.

**WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, demands judgment against Defendant, ANTHONY DeBENEDICTIS, for general damages; special damages including but not limited to lost profits, loss of client goodwill, lost business opportunity, loss of market position and reputation in the industry, diminution of brand, etc.*;* punitive damages; attorneys' fees and costs pursuant to the Contract and applicable contract law; and for all such other further relief this Court deems proper.

### COUNT VI: CONVERSION

92.     Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

93.     Sakal's Customer List and pitchbook constitute exclusive property of Sakal.

94.     ADB misappropriated Sakal's Customer List, including contact information, personal information, and specially acquired information unique to the individuals identified on the List.

95.     ADB misappropriated Sakal's pitchbook.

96.     ADB acted with intent to wrongfully deprive Sakal of possession of its confidential and proprietary information.

97.     As a direct and proximate result of said conversion, Sakal has suffered general and special damages in the form of lost profits, profits, loss of client goodwill, loss of business opportunities, loss of market position and reputation in the industry, and diminution of brand.

98.     The aforesaid actions of conversion by ADB were willful, wanton,

intentional, malicious, and/or in reckless disregard for Sakal's rights.

**WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, demands judgment against Defendant, ANTHONY DeBENEDICTIS, for general damages and special damages, including but not limited to lost profits, loss of client goodwill, loss of business opportunities, damage to client relationships, loss of market position §and reputation in the industry, diminution of brand, etc. and for all such other further relief this Court deems proper.

## COUNT VII: THEFT OF TRADE SECRETS FLORIDA STATUTE § 688.004 DAMAGES

99.   Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

100.   The common law and the Uniform Trade Secrets Act, Fla. Stat. §§ 688.01-688.009 ("FUTSA"), make it unlawful to misappropriate trade secrets through improper means.

101.   At all times material hereto, Sakal was in possession of "trade secrets," as defined by Fla. Stat. § 688.02(4), including, *inter alia,* Sakal's Client List, investment and business strategies, implementation plans, pitchbook, and marketing plans.

102.   Sakal's Customer List and pitchbook, *inter alia,* constitute exclusive property of Sakal.

103.   ADB employed "improper means," as defined by Fla. Stat. § 688.02(1), to obtain Sakal's trade secrets, proprietary and confidential information, including but not limited to its Customer List and pitchbook.

104.   ADB used, and continues to use, Sakal's trade secrets, proprietary and confidential information without Sakal's express or implied consent in violation of Fla. Stat. § 688.001, *et seq.*, including but not limited to its Customer List and pitchbook.

105.   ADB continues to use Sakal's trade secrets, proprietary and confidential information in contravention of Sakal's repeated, express demands for ADB's cessation.

106.   Sakal's trade secrets, proprietary and confidential information, including but not limited to its Customer List and pitchbook, were willfully and maliciously appropriated by ADB.

107.   As a result of ADB's wrongful actions, Sakal has been and continues to be damaged.

**WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, demands judgment against Defendant, ANTHONY DeBENEDICTIS ("ADB"), for damages pursuant to Fla. Stat. § 688.04, including both the actual loss caused by misappropriation and the unjust enrichment obtained through misappropriation that is not taken into account in computing actual loss, or in lieu of damages measured by any other methods, the damages caused by misappropriation measured by imposition of liability for a reasonable royalty for ADB's unauthorized disclosure or use of the trades secrets and confidential information, including but not limited to Sakal's Client List and pitchbook; exemplary damages in an amount not exceeding twice any award made; for an award of attorneys' fees and costs pursuant to Fla. Stat. § 688.005; and for all such other further relief this Court

23

deems proper.

## COUNT VIII: THEFT OF TRADE SECRETS FLORIDA STATUTE § 688.003 INJUNCTIVE RELIEF

108.   Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 and 100 through 108 as if fully set forth herein.

109.   Sakal reasonably fears that if ADB is not enjoined from doing so, he will continue to misappropriate Sakal's trade secrets to solicit and steal Sakal's clients, investors, subscribers, and/or prospective clients and to otherwise interfere with Sakal's business relationships.

110.   Sakal will be irreparably harmed if ADB is not enjoined from utilizing the misappropriated information and material.

111.   Injunctive relief would serve the public interest.

112.   Sakal is without an adequate remedy at law as there are no quantifiable damages that will fully compensate Sakal.

113.   If ADB is not enjoined from engaging in this improper conduct, Sakal's business may be destroyed.

114.   Sakal has a substantial likelihood of success on the merits as Sakal and ADB entered into an Employment Agreement ("the Contract") which barred ADB from taking and utilizing and sharing Sakal's confidential information, including trade secrets.

**WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, seeks an injunction requiring that Defendant, ANTHONY DeBENEDICTIS ("ADB"), cease any and all further misappropriation of Sakal's trade secrets; immediately return all trade

secrets to Sakal; enjoining ADB from further utilization and sharing of Sakal's trade secrets; and awarding Plaintiff its attorneys' fees and costs pursuant to by Fla. Stat. § 688.005; and for all such other further relief this Court deems proper.

**COUNT IX:   BREACH OF CONTRACT
DAMAGES**

115.  Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

116.  ADB voluntarily, and for adequate consideration, entered an Employment Agreement ("the Contract") with Sakal that contained restrictive covenants.

117.  Sections 7.a. and 7.b. of the Contract provide that ADB shall not, directly or indirectly, use, share, or disclose, Sakal's "Confidential Information" during his employment.

118.  Sections 7.a. and 7.c. of the Contract provide that ADB shall not, directly or indirectly, use, share, or disclose Sakal's "Confidential Information" after his employment.

119.  Sections 8 and 9 of the Contract provide that ADB shall not, for a period of two years after his employment with Sakal, work for Sakal's competitors or solicit Sakal's clients or prospective clients.

120.  Section 10 of the Contract provides that ADB shall return all of Sakal's Confidential Information upon separation from Sakal.

121.  By his conduct as alleged herein, ADB has breached the Contract.

122.  As a result of ADB's conduct as alleged herein, Sakal has been and continues to be damaged.

25

123.   Sakal is entitled to attorneys' fees pursuant to Section 2.d. of Exhibit A to the Contract. See Exhibit 1.

**WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, demands judgment against Defendant, ANTHONY DeBENEDICTIS, for general and special damages including but not limited to lost profits, loss of client goodwill, lost business opportunity, loss of market position and reputation in the industry, and diminution of brand, etc.*;* for an award of Plaintiff's attorneys' fees and costs; and for all such other further relief this Court deems proper.

### COUNT X:   BREACH OF CONTRACT
### INJUNCTIVE RELIEF

124.   Sakal re-alleges and incorporates by reference Paragraphs 1 through 52 and 108 through 114 as if fully set forth herein.

125.   Section 12.1. of the Contract expressly provides that ADB's breaches as set forth herein will result in substantial and irreparable harm and damages to Sakal, for which money damages alone would be an inadequate remedy at law.

126.   Section 12.c. of the Contract provides that Sakal is entitled to do all things permissible and take all permissible actions; an immediate injunction and restraining order to stop ADB's ongoing breach is a permissible action.

**WHEREFORE,** Plaintiff, SAKAL ADVISORY LLC, requests that this Court enter judgment permanently enjoining Defendant, ANTHONY DeBENEDICTIS, from using, disclosing, any and all other misappropriation of Sakal's trade secrets, proprietary, and confidential information; directing ADB to immediately return all trade secrets and confidential information in ADB's possession or

control to Sakal; and for a period of two (2) years, enjoining ADB from engaging in a competing business, soliciting Sakal's clients, investors, and subscribers, and interfering with Sakal's business relationships and prospective clients; for an award of Plaintiff's attorneys' fees and costs; and for all such other further relief this Court deems proper.

## VI.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

LAW OFFICES OF MICHAEL LAPAT

*s/ Michael Lapat*

Michael Lapat, Esq.
2855 N. University Drive, Ste. 230
Coral Springs, Florida 33065
Fla. Bar No. 0020524
Office: (954) 345-6442
Email: lapat@lapatlaw.com
*Counsel for SAKAL ADVISORY LLC*

## CERTIFICATE OF FILING

I HEREBY CERTIFY that on February 17th, 2023, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF.

LAW OFFICES OF MICHAEL LAPAT

*s/ Michael Lapat*

Michael Lapat, Esq./SB# 0020524